1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JEANETTE SHEPARD,                        No.  2:16-cv-2321-KJN

12                Plaintiff,

13        v.                                   ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                 Defendant.
16

17

18        Plaintiff Jeanette Shepard seeks judicial review of a final decision by the Commissioner of

19   Social Security ("Commissioner") denying plaintiff's application for Supplemental Security

20   Income ("SSI") under Title XVI of the Social Security Act ("Act").[1]  In her motion for summary

21   judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was

22   not disabled from October 26, 2011, the date that plaintiff's SSI application was deemed filed,

23   through May 13, 2015, the date of the final administrative decision.  (ECF No. 15.)  The

24   Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment.  (ECF

25   No. 16.)  Subsequently, plaintiff also filed a reply brief.  (ECF No. 19.)

26   _____

27   [1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties
     voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF
28   Nos. 9, 21.)

                                           1

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

I.  BACKGROUND

Plaintiff was born on June 20, 1962; has a limited education; can communicate in English; and previously worked as a caregiver, in-home support care worker, and babysitter. (Administrative Transcript ("AT") 32.)[2]  On August 3, 2012, plaintiff applied for SSI, claiming that she was disabled due to diabetes, hepatitis C, bipolar disorder, heart problems, arthritis, migraines, swelling in feet and legs, and other "multiple problems."  (AT 18, 87, 193.)[3]  After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on March 17, 2015, at which plaintiff, represented by counsel, and a vocational expert ("VE") testified.  (AT 39-65.)  The ALJ subsequently issued a decision dated May 13, 2015, determining that plaintiff had not been under a disability, as defined in the Act, from October 26, 2011, the date that plaintiff's SSI application was deemed filed, through the date of the ALJ's decision. (AT 18-34.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on July 29, 2016.  (AT 1-3.)  Plaintiff subsequently filed this action on September 28, 2016, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.  ISSUES PRESENTED

On appeal, plaintiff raises the following issues:  (1) whether the ALJ improperly weighed the mental health opinion evidence; and (2) whether the ALJ erroneously discounted the statement of plaintiff's mother.

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff's filing date was subsequently amended to October 26, 2011, because the ALJ granted plaintiff's motion to reopen a prior application.  (AT 18.)  Thus, for purposes of this appeal, the operative filing date for plaintiff's SSI application is deemed to be October 26, 2011.

III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.   DISCUSSION

Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[4] At the first step, the ALJ concluded that plaintiff had not

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing her past relevant work? If so, the

engaged in substantial gainful activity since October 26, 2011, plaintiff's SSI application date. (AT 20.) At step two, the ALJ found that plaintiff had the following severe impairments: diabetes mellitus with neuropathy, depressive disorder, and bipolar disorder. (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 22.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following limitations: such an individual should not engage in any climbing of ladders, ropes, or scaffolding; such an individual could frequently climb ramps and stairs, frequently stoop, kneel, crouch, and crawl; such an individual could understand, remember, and carry out simple job instructions; such an individual could maintain attention and concentration for simple job tasks; such an individual could occasionally interact with the public; and such an individual could interact appropriately with supervisors and co-workers.

(AT 24.) At step four, the ALJ determined that plaintiff was unable to perform any past relevant work. (AT 32.) Nevertheless, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, and RFC, and in reliance on the VE's testimony, there were other jobs that existed in significant numbers in the national economy that plaintiff could perform. (AT 32-33.)

Consequently, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from October 26, 2011, plaintiff's SSI application filing date, through May 13, 2015, the date of the ALJ's decision. (AT 33.)

---

claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

<u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

*Whether the ALJ improperly weighed the mental health opinion evidence*[5]

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201-02 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).  Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. <u>Holohan</u>, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  <u>Lester</u>, 81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  <u>Id.</u> at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, <u>Edlund</u>, 253 F.3d at 1157,[6] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); <u>see also</u> <u>Magallanes</u>, 881 F.2d at 751.  The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional.  <u>Lester</u>, 81 F.3d at 831.

---

[5] At least for purposes of this appeal, plaintiff does not seek remand based on the ALJ's evaluation of plaintiff's physical impairments and physical functional capacity.

[6] The factors include:  (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization.  20 C.F.R. § 404.1527.

In this case, as plaintiff acknowledges, there is a "vacuum of treating evidence" for mental health issues, with only a few scattered references to mental impairments mostly contained in primary care treatment records. (ECF No. 15 at 5.) Thus, an evaluation of plaintiff's mental functional capacity largely hinges on the confliction opinions of two consultative examiners and the state agency physicians.

On December 30, 2011, plaintiff was personally examined by consultative evaluating psychologist Dr. T. Renfro. (AT 394-99.) Dr. Renfro diagnosed plaintiff with depressive disorder and alcohol/amphetamine abuse/dependence in full sustained remission, and opined that plaintiff could understand, remember, and carry out simple one- or two-step job instructions; could accept simple instructions from supervisors; was unable to do detailed and complex instructions; was mildly impaired in her ability to relate and interact with coworkers and the public, associate with day-to-day work activity including attendance and safety, and perform work activities without special or additional supervision; and was mildly to moderately impaired in her ability to maintain persistence and pace, and perform work activities on a consistent basis. (AT 398.)

Subsequently, on January 17, 2013, plaintiff was personally examined by consultative evaluating psychologist Dr. Robert Noelker. (AT 402-04.) Even though, as plaintiff points out, the underlying clinical findings of both consultative examinations were quite similar, Dr. Noelker diagnosed plaintiff with bipolar disorder, and opined that plaintiff's ability to understand and remember simple one- or two-step job instructions was moderately to severely impaired, her ability to sustain concentration and persistence was severely impaired, her social interactions were severely impaired, and her ability to adapt to and respond effectively to pressures normally found in the day-to-day work setting was severely impaired. (AT 403-04.)

Thereafter, on January 28, 2013, state agency psychologist Dr. Eric Wiener reviewed plaintiff's records and opined that plaintiff was limited to simple, repetitive tasks with brief lapses of focus, a low demanding work environment, and only brief interactions with others. (AT 83.) Finally, on January 9, 2014, state agency psychologist Dr. Tawnya Brode reviewed plaintiff's records and affirmed Dr. Wiener's assessment. (AT 101.)

The ALJ's decision discussed and evaluated each of the above-mentioned opinions, and ultimately gave significant weight to Dr. Renfro's opinion while giving little weight to Dr. Noelker's opinion. (AT 28-30.) Plaintiff correctly notes that some of the reasons provided by the ALJ for her assignment of weight are unconvincing. For example, although Dr. Renfro's opinion was based on a personal examination, so was the opinion of Dr. Noelker. Furthermore, the ALJ's finding that Dr. Noelker's opinion was inconsistent with plaintiff's treatment notes is not particularly persuasive, because the record contains such minimal mental health treatment notes. Nevertheless, the ALJ reasonably found that Dr. Renfro's opinion was more consistent with plaintiff's activities, which included sweeping, mopping, vacuuming, preparing meals, washing dishes, spending time with her grandchildren, watching television with family, having a boyfriend, shopping in stores for food, going to church, playing Bingo, being able to drive, and being able to pay bills, count change, handle a savings account, and use a checkbook. (AT 29-30, 50, 56, 212, 216, 218, 396, 406, 583.) Those activities plausibly suggest that plaintiff is not as limited as Dr. Noelker found. Although plaintiff's counsel posits his lay opinion that even a "raving schizophrenic" could perform such activities (ECF No. 15 at 6), plaintiff's alternative interpretation, even if well-founded, does not serve as a proper basis for reversal. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one").

Based on such activities, as well as the opinion of Dr. Renfro, the ALJ also rationally concluded that some of the limitations offered by the state agency physicians were overly restrictive. (AT 29.) For example, as the ALJ reasoned, plaintiff's ability to go to church, spend time with her grandchildren, and play Bingo suggests that she need not be limited to only brief interactions with others. (Id.) Dr. Renfro, who, unlike the state agency psychologists, personally examined plaintiff, also did not feel that a limitation to a low demanding work environment was necessary.

Because Dr. Renfro personally examined plaintiff and made independent clinical findings, there is no question that his opinion constituted substantial evidence on which the ALJ was

entitled to rely.  Moreover, as discussed above, the ALJ provided specific and legitimate

reasoning for why Dr. Renfro's opinion was adopted over the opinions of the other mental health

professionals in the record.  Even if this court may have weighed the evidence differently upon *de

novo* review, the court defers, as it must, to the ALJ's rational resolution of the inconsistent

mental health opinion evidence.

Finally, to the extent that plaintiff suggests that Dr. Renfro's mild to moderate mental

limitations are not adequately incorporated into the ALJ's assessed RFC, that argument lacks

merit.  The Ninth Circuit has already held that moderate mental limitations do not even require

vocational expert testimony.  Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007).  Moreover,

the mild to moderate limitations assessed by Dr. Renfro with respect to maintaining persistence

and pace, and performing work activities on a consistent basis, are adequately captured by the

ALJ's restriction to simple tasks, which logically involve less mentally challenging activities and

require less mental stamina.

*Whether the ALJ erroneously discounted the statement of plaintiff's mother*

"[C]ompetent lay witness testimony cannot be disregarded without comment" and "in

order to discount competent lay witness testimony, the ALJ must give reasons that are germane to

each witness."  Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (internal quotation and

citation omitted).  Here, the ALJ specifically discussed the statement submitted by plaintiff's

mother, clearly indicating that the ALJ had considered that information.  (AT 25, 30-31.)  The

ALJ reasoned that the statement of plaintiff's mother was inconsistent with the medical evidence,

as properly weighed.  (AT 31.)  Furthermore, the ALJ noted that although plaintiff's mother

stated that plaintiff did not spend time with others, in fact plaintiff went to church, watched

television with her family, played Bingo, and played with her grandchildren.  (AT 31, 228.)  As

such, the ALJ provided germane reasons for discounting the statement of plaintiff's mother.

////

////

////

////

8

V.     CONCLUSION

        For the foregoing reasons, the court concludes that the ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

        1.      Plaintiff's motion for summary judgment (ECF No. 15) is DENIED.

        2.      The Commissioner's cross-motion for summary judgment (ECF No. 16) is GRANTED.

        3.      The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.

        4.      The Clerk of Court shall close this case.

        IT IS SO ORDERED.

Dated:  January 24, 2018

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE